J-A27037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: E.E.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 892 MDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  9-AD-2024

| | | |
|---|---|---|
| IN THE MATTER OF: P.E.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 893 MDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  10-AD-2024

| | | |
|---|---|---|
| IN THE MATTER OF: L.C.M.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 894 MDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  11-AD-2024

| | | |
|---|---|---|
| IN THE MATTER OF: R.Q.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.R.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 895 MDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Dauphin County Orphans' Court at
No(s):  12-AD-2024

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　**FILED: JANUARY 30, 2025**

A.R.M. ("Mother") appeals from the decrees terminating her parental rights to R.Q.M. (born 2016), P.E.M. (born 2018), E.E.R. (born 2019), and L.C.M.M. (born 2021) (collectively, or in combination, "the Children"). We affirm.

In January 2024, Dauphin County Social Services for Children and Youth ("the Agency") filed petitions seeking the involuntary termination of Mother's parental rights to the Children. At hearings on April 3, April 16, and May 29, 2024, the Agency presented several witnesses: Aesha Wiggins, the case supervisor; Tnika Lewis, who supervised Mother's visits between August 2022 and June 2023; Kira Heinbaugh, who supervised Mother's visits after June 2023; the resource parents for the older Children; and one of the resource parents for the youngest child. Mother testified on her own behalf. Following the hearings, the court terminated Mother's parental rights. It issued decrees finding grounds for termination under 23 Pa.C.S.A. § 2511(a)(2) and (a)(8),

and that termination would be in the Children's best interest under 23 Pa.C.S.A. § 2511(b).

In its Rule 1925(a) opinion, the court summarized the reasons for Children's removal from Mother's care as follows.

> Prior to the placement of the three boys, Mother failed to provide proper supervision for them, to the degree she was charged with and pled guilty to numerous counts of child endangerment. Those were the second set of such charges and convictions for her for child endangerment. . . . [H]er endangerment to her children included leaving them unsupervised and wandering alone in dangerous environs including near railroad tracks, on a roof, near a broken window and from a hotel room in an urban area.

Trial Court Opinion, filed 7/19/24, at 29. While the charges were pending, in August 2020, the juvenile court adjudicated the three older Children dependent and ordered that they remain in the care of maternal grandmother. Approximately four months later, Mother pleaded guilty to the charges and began to serve six months' work release. In June 2021, she moved in with maternal grandmother and the three older Children.

Just a few months later, in September 2021, the maternal grandmother notified the Agency that she could no longer care for the Children. The Agency "excluded [Mother] as a resource at the time due to her lack of any progress towards her goals and objectives. Additionally, Mother was due to give birth to her fourth child . . . and was struggling to maintain housing." *Id.* at 6. The court placed the three older Children in the custody of the Agency, who placed them with their current foster parents.

Mother's youngest child was born the following month, October 2021, and was initially placed with Mother's relatives. However, within a few months, they informed the Agency they could no longer care for the child. The juvenile court adjudicated the youngest child dependent in January 2022, on the basis that Mother had not made substantial progress towards her goals and objectives for the three older Children. *Id.* at 7. The youngest child was placed with her current foster parents in February 2022.

The Agency filed for termination approximately two years later, in January 2024. It alleged that Mother had failed to demonstrate appropriate supervision and age-appropriate discipline at visits with the Children and had not developed any community supports. It also asserted that she had failed to attend the Children's medical appointments and to pay child support. *Id.* at 11-12.

According to the orphans' court, the testimony at the termination hearings established that while Mother completed an online parenting course, she failed to implement the skills she learned. *Id.* at 14. Similarly, Mother complied with the requirement that she complete a psychological evaluation, and was diagnosed with adjustment disorder, anxiety, and "other specified personality disorder (mixed personality traits)." *Id.* at 11. The evaluation suggested Mother participate in outpatient therapy to promote her "assertiveness, coping, and effective communication." *Id.* However, Mother failed to improve on her assertiveness with the Children. *Id.* at 13-14, 15. Mother could not manage all four Children, and the visits were "often chaotic."

*Id.* at 14, 17-18. The supervised visits almost always required intervention, redirection, and parental coaching. *Id.* at 10, 14. Mother never got to the point of being ready for home visits. *Id.* at 17, 19.

The court noted that Lewis, who "strongly advocated" for Mother, testified that Mother's skills had improved while she was supervising Mother's visits between 2022 and 2023. However, Lewis also testified she believed Mother would always struggle with her parenting skills and with maintaining an adequate support system. *Id.* at 18-19, 30-31.

The court also noted that Heinbaugh testified Mother had not improved over the course of the visits since she began supervising them in 2023. *Id.* at 30, 17. Heinbaugh testified that she had to prompt Mother to change diapers and to supervise the Children during bathroom visits. *Id.* at 17. Mother consistently checked her phone, showed the Children videos when encouraged not to, was only partially engaged with the Children and frequently frustrated. *Id.* Mother was not open to Heinbaugh's direction. *Id.* On one occasion, Mother allowed the Children to smear peanut butter all over toys and the door of the visitation room. *Id.* Another time, Mother asked the oldest child if he was "going to be Amish for Halloween," because the child's foster parents are Amish. *Id.* He thereafter declined visits with Mother. *Id.* On a third occasion, one of the boys took the youngest child's pretzel, and the child threw a tantrum. Mother asked the child why she was acting like a "drama queen," told the older boys they could eat the child's food, and put her on a time-out couch. *Id.* at 26. Mother did not try to use any de-escalation techniques, and

a supervisor had to calm the child while another arranged for her to be picked up early. *Id.*

The court also observed that Mother testified that she had family members who would help her care for the Children if they were reunited with her. However, Mother "was unable to explain how she might think family would be available as a resource when they failed to show up for her at a termination hearing." *Id.* at 25.

The court found that Mother had failed to provide the parental care and control necessary for the Children's well-being for 30 months in the case of the older Children, and 26 months in the case of the youngest child. *Id.* at 29-30. The court also found clear and convincing evidence that Mother cannot or will not remedy two of the conditions and causes of her parental incapacity: (1) her "inability to parent and exhibit a proper level of supervision warranting unsupervised care and custody of the children" and (2) her "utter failure to exhibit and develop any community and familial supports." *Id.* at 30. The court found her failure to provide essential parental care and control "has been primarily caused by significant deficits in her ability to understand how to parent including how to properly supervise her children. These deficits have not been remedied by Mother to date and this Court believes Mother would be unable to remedy them in the future." *Id.* at 30.

The court also found that the conditions that led to the Children's removal continue to exist, and that terminating Mothers' parental rights would be in the Children's best interest. It found that while the Children love Mother,

- 6 -

the evidence did not establish they are strongly bonded Mother. In contrast, it found that they are undeniably bonded to their resource parents "and are thriving." *Id.* at 34.

Mother appealed.[1] She raises the following issues:

> [1. . . .] Whether the Trial Court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. §2511(a)(2), where Mother presented evidence that she was able to provide essential parental care, control, and subsistence necessary for the child's physical and mental wellbeing because any conditions that lead to placement were remedied by Mother.
>
> [2. . . . ] Whether the Trial Court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. §2511(a)(8), where Mother presented evidence that the conditions which led to the placement of the child no longer exist.
>
> [3. . . . ] Whether the Trial Court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. §2511(b), by failing to give primary consideration to the developmental, physical and emotional needs and welfare of the child?

Mother's Br. at 5-6 (suggested answers omitted).[2]

---

[1] The court also terminated the parental rights of the Children's fathers. None of the fathers appealed.

[2] Mother also argues that according to the transcript of the hearing, which she did not receive until after she filed her statement of errors, the court stated that it terminated her parental rights under Section 2511(a)(1) and (a)(4). She claims it was error for the court to change its disposition in the written order and claim it had terminated her parental rights under Section 2511 (a)(2) and (a)(8). However, the petitions for the termination of Mother's parental rights alleged grounds for termination under Sections (a)(1), (a)(2), (a)(5), and (a)(8). Mother does not assert that she did not have notice of the alleged grounds for termination under Sections 2511(a)(2) and (a)(8) or that

*(Footnote Continued Next Page)*

In relation to each issue, Mother argues the orphans' court abused its discretion in relying on Wiggins' testimony, when Wiggins "was not privy to . . . much of the case history first-hand." *Id.* at 24, 30. She argues Wiggins' testimony regarding Mothers' ability to supervise the Children was hearsay, as it was based on reports given by others. *Id.* at 29. Mother also argues the court erred in admitting Wiggins' testimony to the extent it was derived from her review of the documentation of the dependency proceedings in juvenile court. *Id.* at 28. Mother argues the record of the dependency proceedings is hearsay, and contends its admission was erroneous and denied her the opportunity to cross-examine or object to the allegations made during those proceedings. *Id.* at 18, 30. Mother argues, "Dependency proceedings, conducted under [the] Rules of Juvenile Court Procedure, include allowances for hearsay; a [t]ermination proceeding conducted under [the] Rules of Orphans' Court procedure include no such allowance." *Id.* at 28. Mother also argues the court erred by admitting the psychological report into evidence when it was not properly authenticated. *Id.* at 27.

Next, Mother argues the orphan's court erred in finding clear and convincing evidence that she cannot or will not remedy the causes of her parental incapacity under Section 2511(a)(2) and that the conditions that led to the Children's removal persist under Section 2511(a)(8). She claims she

---

she did not have an opportunity to defend against those grounds at the hearing. We therefore fail to see how the court's alleged misstatement at the hearing prejudiced Mother.

"has met nearly every goal the Juvenile Court set which directly impacts the safety, permanency, and well-being" of the Children. *Id.* at 41. She asserts that she did all of the following: completed a psychological evaluation and engaged in mental health services; completed a parenting class; identified familial supports; attended all court proceedings aside from two during her incarceration; executed releases; attended over 60 supervised visits over a two-year period; secured appropriate housing; identified childcare and school options for the Children; and maintained employment. *Id.* at 41-43. Mother argues that Lewis, who supervised Mothers' visits from August 2022 to June 2023, offered first-hand testimony that Mother "complied with requirements, followed special instructions required by Foster Parents of the boys, was open to redirection, and attentive to the [C]hildren[.]" *Id.* at 28-29.

Mother further argues the Children were removed due to an alleged lack of parental supervision, but the court and Agency measured Mother's progress by the benchmark of "assertiveness," imposed by the psychological evaluation. *Id.* at 24-25. She maintains that this is a subjective measurement, and the court improperly equated her failure to comply with this requirement with a failure to prove she can properly parent. *Id.* at 26-27.

Mother also argues that the Agency limited her visitation with the Children between August 2020 and October 2021, and that in July 2023, the Agency reduced her visitation from three hours bi-weekly to 90 minutes bi-weekly. *Id.* at 33, 35-36, 44. She contends Lewis advocated for increased visitation for Mother, but her request was denied without reason. *Id.* at 35.

She asserts that by reducing her visits, the Agency prevented her from reestablishing her parental bond and developing her parenting skills, and that the court erred in concluding she had had ample opportunity to demonstrate her parenting skills. *Id.* at 34, 37-38. She also argues the Agency should have referred her to a hands-on parenting program if it found her parenting skills were still lacking. *Id.* at 36-37.

Mother additionally argues the court erred in concluding she would not have familial support if reunited with the Children, when familial/kinship resources were identified in an Agency meeting in 2021. *Id.* at 38-39.

Finally, regarding her third issue, Mother argues it is "improper" to terminate her parental rights on the basis that the Children share stronger bonds with their resource parents, when the Agency limited her opportunities to bond with her Children. *Id.* at 51-52.[3]

Our standard of review is as follows.

> A party seeking termination of parental rights bears the burden of establishing grounds for termination "by clear and convincing evidence." *In re Z.S.W.*, 946 A.2d 726, 728 (Pa.Super. 2008). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Id.* at 728-729 (internal quotation marks and citation omitted). We accept the findings of fact and credibility determinations of the trial court if the record supports them. *See In re C.M.C.*, 140 A.3d 699, 704 (Pa.Super. 2016). If the factual findings have support in the record, we then

---

[3] The Agency and the guardian *ad litem* have filed briefs supporting termination.

determine if the trial court committed an error of law or abuse of discretion. ***Id.***

***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018).

The termination of parental rights is governed by Section 2511 of the Adoption Act. ***Matter of Adoption of L.C.J.W.***, 311 A.3d 41, 48 (Pa.Super. 2024); ***see*** 23 Pa.C.S.A. § 2511. The statute first requires the party seeking termination to establish that the parent's conduct satisfies one of the statutory grounds for termination delineated in the subsections of Section 2511(a). ***L.C.J.W.***, 311 A.3d at 48; ***see*** 23 Pa.C.S.A. § 2511(a). This Court need only affirm the orphans' court's finding for termination under a single subsection of Section 2511(a). ***In re D.L.B.***, 166 A.3d 322, 327 (Pa.Super. 2017). The petitioner must then prove that termination of parental rights will best serve the needs and welfare of the child, pursuant to Section 2511(b). ***L.C.J.W.***, 311 A.3d at 48; ***see*** 23 Pa.C.S.A. § 2511(b).

Here, the court found grounds for termination under Section 2511(a)(2) and (a)(8). We will only address the latter subsection. It provides for termination when:

> (1) the child has been removed from the care of the parent for at least twelve months;
>
> (2) the conditions which led to the removal or placement of the child still exist; and
>
> (3) termination of parental rights would best serve the needs and welfare of the child.

***See L.C.J.W.***, 311 A.3d at 49; 23 Pa.C.S.A. § 2511(a)(8).

Here, the first prong of subsection (a)(8) has been met, as the Children were removed for well over a year before the Agency filed for termination. Mother does not dispute this.

The second prong of the subsection inquires whether the conditions leading to the child's removal still exist. It does not ask about a parent's ability or desire to remedy those conditions in the future. **See** 23 Pa.C.S.A. § 2511(a)(8). We have previously recognized that this "may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children[.]" **In re Adoption of R.J.S.**, 901 A.2d 502, 513 (Pa.Super. 2006). However, in requiring removal for one year before becoming applicable, subsection (a)(8) "implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." **Id.** Therefore, instead of focusing on the past or future conduct of the parent, subsection (a)(8) asks only "whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." **L.C.J.W.**, 311 A.3d at 49 (citation omitted).

Here, the court found clear and convincing evidence that the conditions leading to the Children's removal from Mother's care still exist. This was supported by record evidence and was not an abuse of discretion. The three older Children were removed from Mother's care after she failed to safely supervise them and was criminally convicted. The youngest child was removed due to the same concern. The testimony at the hearings regarding Mother's

visitation with the Children was sufficient to establish that she still lacked the capacity to safely supervise them. Reunification was not imminent.

We reject Mother's argument that the court's determinations in this regard were not based on competent, record evidence. Wiggins, Lewis, and Heinbaugh all offered first-hand testimony regarding their observations of Mother interacting with the Children. To the extent the court admitted, and relied on, the record of the dependency proceedings, Mother has failed to state where she raised this issue below. **See** Pa.R.A.P. 302(a), 2119(e). Mother similarly fails to state where she objected to the admission of the psychological report into evidence. Moreover, Mother failed to include these issues in her Rule 1925(b) statement or in her statement of questions involved. These issues are therefore waived, and we will not reach them. **See** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 2116(a).

Moving to the final prong of subsection (a)(8) – whether termination would best serve the child's needs and welfare – this inquiry overlaps with subsection (b). **Compare** 23 Pa.C.S.A. § 2511(a)(8) **with** § 2511(b); **see In re I.J.**, 972 A.2d 5, 12 (Pa.Super. 2009). In conducting this analysis, the court must place the child's needs above those of the parent, and consider "intangibles such as love, comfort, security, and stability." **Int. of K.T.**, 296 A.3d 1085, 1105-06 (Pa. 2023) (citation omitted). It must examine whether the child has a beneficial bond with the biological parent and the effect of severing any such bond, and whether the child is bonded to pre-adoptive foster parents. **Id.**; **see also id.** at 1109-11, 1113-15.

Here, the court found that the evidence supported a determination that the Children are not strongly bonded with Mother but enjoy strong bonds with their foster parents, and that allowing for adoption by their foster parents would be in their best interests. The record supports these conclusions. The Children have been living with their foster parents for over two years, a significant portion of their young lives. The older Children's foster parent testified that the oldest child expressed his desire to be adopted, and that the two younger boys don't understand the idea of adoption. Trial Ct. Op. at 20-21. The youngest Child has never been in Mother's care and was only three months old when she was placed with her foster parents.

Finally, we reject Mother's argument that the court abused its discretion in finding she was not strongly bonded with the Children when the Agency and the juvenile court had denied her request for increased visitation. The best interest analysis does not turn on fault, but on the effects that granting or denying termination will have on the Children.[4] Here, the court determined, based on the record, that the Children's futures would be best served by adoption by their foster families. The court did not abuse its discretion.

Decrees affirmed.

_____

[4] **See In re D.C.D.**, 105 A.3d 662, 675 (Pa. 2014) (stating that "the remedy for an agency's failure to provide services is not to punish an innocent child, by delaying her permanency through denying termination, but instead to conclude on the record that the agency has failed to make reasonable efforts," which results in the imposition of a fine).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 01/30/2025